# STOCK PURCHASE AND SALE AGREEMENT BETWEEN SAND HILL CAPITAL HOLDINGS, INC. AND THOMVEST HOLDINGS LLC

THIS STOCK PURCHASE AND SALE AGREEMENT (this "Agreement") is entered into as of November 30, 2007 (the "Effective Date") by and between Sand Hill Capital Holdings, Inc., a Delaware corporation ("Sand Hill") and Thomvest Holdings LLC, a Delaware Limited Liability Company ("Thomvest").

## Recitals

A.  Sand Hill is the owner of the cash, stocks and warrants listed in Exhibit A ("Stock");

B.  Sand Hill and its affiliated entities owe Thomvest Ten Million Dollars ($10,000,000) ("Debt") pursuant to the Subordinated Promissory Note dated November 29, 2002 and the Subordinated Security Agreement and Guarantee as of the same date;

C.  Sand Hill wishes to sell and transfer to Thomvest and Thomvest wishes to acquire all of Sand Hill's right, title and interest in and to the Stock, in consideration for a partial reduction of the Debt, under the terms and conditions set forth herein;

D.  Sand Hill, Thomvest, and William J. Del Biaggio were parties to that certain Memorandum of Understanding, dated November 19, 2002, pursuant to which Thomvest and William J. Del Biaggio paid a portion of the accounts payable and the ongoing expenses of Sand Hill;

E.  The capitalization of Sand Hill immediately prior to the execution of this Agreement consists of the following: (a) a total of 10,000,000 authorized shares of preferred stock, $0.001 par value per share (the Preferred Stock"), and (b) a total of 25,000,000 authorized shares of common stock, $0.001 par value per share (the "Common Stock");

NOW THEREFORE in consideration of the mutual covenants and agreements contained in this Agreement and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged), the parties hereto agree as follows:

I.  Stock Purchase and Sale

(a) As of the Effective Date, Sand Hill hereby sells and transfers to Thomvest, and Thomvest hereby purchases and acquires, all of Sand Hill's right, title and interest in and to the Stock on the terms and conditions contained herein.

(b) In consideration for the Stock, Thomvest hereby reduces the Debt by $788,015.08, effective as of the Closing (as defined in Section III).

II.  Debt Conversion

EXHIBIT 1

The remainder of the Debt, equal to $9,211,984.92, will be converted to equity by way of an increase to the contributed surplus of Sand Hill effective as of the Closing (as defined in Section III).

III.    Completion of the Transaction

In furtherance of the completion of the foregoing, as of the Effective Date, Sand Hill shall: (a) deliver to Thomvest certificates representing the Stock, duly endorsed for transfer to Thomvest or accompanied by a stock power, duly completed and executed, transferring the Stock to Thomvest; and (b) make certain distributions with respect to the total cash in the Company's accounts, as set forth in Exhibit B, attached hereto (the foregoing deliveries and distributions being referred to as, once effected, "Closing").

IV.    Representations and Warranties; Covenants

(a)    Sand Hill hereby represents and warrants to Thomvest as follows:

(i)    Sand Hill is a corporation duly organized, validly existing and in good standing under the laws of Delaware.

(ii)    Sand Hill has full power, authority and legal right to enter into this Agreement and the transactions contemplated hereby and to perform all its obligations hereunder, and has taken all action required by law, its governing instruments or otherwise to authorize the execution, delivery and performance of this Agreement and consummation of the transactions contemplated hereby and the delivery of all the deeds, agreements, certificates and other documents or instruments contemplated hereby.

(iii)    This Agreement has been duly and validly executed and delivered by it, and constitutes a valid and legally binding agreement enforceable against it in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency or other laws affecting generally the enforceability of creditors' rights and by limitations on the availability of equitable remedies.

(iv)    Neither the execution nor delivery by it of this Agreement or the other instruments, documents and agreements contemplated hereby, nor the consummation of the transactions contemplated hereby, nor compliance with the terms, conditions and provisions hereof or thereof, will conflict with or result in a breach by it of the terms, conditions or provisions of (i) its certificate of incorporation or by-laws, or (ii) any applicable license, permit, statute, ordinance, law, judgment, order, writ, injunction, decree, rule or regulation of any court, administrative agency or other governmental authority or of any determination or award of any arbitrator binding on it, or on any of its properties, or (iii) any agreement or instrument to which it is a party or by which it or any of its properties are bound or constitute a default thereunder.

(v)    Sand Hill has good and valid title to the Stock and, upon the transfer thereof to Thomvest in accordance herewith, Thomvest shall acquire good and valid title to the Stock, free and clear of all liens and encumbrances.

(vi) The total Sand Hill Stock as of the Effective Date is as set forth in Exhibit A, attached hereto.

(b) Thomvest hereby represents and warrants to Sand Hill as follows:

(i) Thomvest is an "accredited investor" (as defined in Rule 501(a) of Regulation D of the Securities Act of 1933, as amended (the "Securities Act")) and that it is acquiring the Consideration or the Stock, respectively, for investment and for its (or its affiliated entities) own account and not with a view to distribution thereof in violation of the Securities Act.

(ii) Thomvest has full power, authority and legal right to enter into this Agreement and the transactions contemplated hereby and to perform all its obligations hereunder, and has taken all action required by law, its governing instruments or otherwise to authorize the execution, delivery and performance of this Agreement and consummation of the transactions contemplated hereby.

(iii) Thomvest represents and warrants that in connection with the transactions contemplated herein, Sand Hill and its affiliates, employees, and representatives are hereby and forever released from any and all funding obligations, commitments, or liabilities associated with Sand Hill and its affiliated entities.

V.  Nature of Sale

(a) Each of Sand Hill and Thomvest represents and warrants that it is familiar with the financial condition of Sand Hill, its business and prospects, that it has had full opportunity to investigate and review the foregoing, and that it has received from Sand Hill, answers and other information deemed necessary by it to consider in connection with its decision to invest the Stock.

(b) Each of Sand Hill and Thomvest understands and acknowledges that the Stock has not been and will not be registered under the Securities Act, and may not be offered, sold or otherwise transferred other than pursuant to an effective registration statement under the Securities Act or in a transaction that is exempt from the registration requirements of the Securities Act; and each of Sand Hill and Thomvest understands and acknowledges that any certificates or documents representing the Stock, as applicable, may, for so long as required under the Securities Act, bear a legend to that effect.

VI.  Entire Agreement

This Agreement contains the entire agreement among the parties with respect to the transaction contemplated by this Agreement and supersedes all prior agreements, understandings, negotiations and discussions, whether written or oral, of the parties, and no amendment or modification of this Agreement shall be effective unless in writing and signed by the party against which it is sought to be enforced.

VII.  Assignment

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided, however, that this Agreement may not be assigned by either party without the prior written consent of the other party hereto. Any consent granted by either party to an assignment by the other party shall not be deemed a consent to any subsequent assignment.

VIII. Headings

Headings of the sections of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the heading of any section.

IX. Counterparts; Facsimile Signature

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. This Agreement may be executed via facsimile, and such agreement executed via facsimile shall have the same force and effect as an original document and shall be legally binding upon the parties.

X. No Third Party Beneficiary

This Agreement shall be binding upon and inure to the sole benefit of the parties and their successors and permitted assigns and nothing in this Agreement, express or implied, is intended to or shall confer upon any other person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

XI. Further Assurances

Each of Sand Hill and Thomvest shall promptly do, make, execute or deliver, or cause to be done, made, executed or delivered, all such further acts, documents and things as the other may reasonably require from time to time for the purpose of giving effect to this Agreement and shall use its best efforts and take all such steps as may be reasonably within its power to implement to their full extent the provisions of this Agreement.

XII. Governing Law

The validity of this Agreement and of any of its terms or provisions, as well as the rights and duties of the parties under this Agreement, shall be construed pursuant to and in accordance with the laws of the State of Delaware, without regard to conflict of laws principles.

[signature page follows]

IN WITNESS WHEREOF the parties hereto have executed this Agreement as of the date first above written.

SAND HILL CAPITAL HOLDINGS, INC.        THOMVEST HOLDINGS LLC

By: _____       By: _____
    Name: ROBERT A. JOHNSON                  Name:
    Title: PREZ                               Title:

IN WITNESS WHEREOF the parties hereto have executed this Agreement as of the date first above written.

| SAND HILL CAPITAL HOLDINGS, INC. | THOMVEST HOLDINGS LLC |
|---|---|
| By: _____<br>Name:<br>Title: | By: *[signature]*<br>Name: William T. Dodds<br>Title: Vice President |

<u>**Exhibit A**</u>
<u>**Stock**</u>

**Cash, Stocks and Warrants of Sand Hill Capital Holdings, Inc.**

**EXHIBIT A**
**SAND HILL CAPITAL HOLDINGS INC.**
**LIST OF ASSETS**

| Description | Account Number | Type of Shares | # of Shares | Market Price Per Share | Value |
|---|---|---|---|---|---|
| **CASH** | | | | | |
| First Bank Commercial Checking Account | #9418902461 | | | | $ 1,781,681.98 |
| First Bank - General Account | #9418902348 | | | | 155.15 |
| Total Cash Prior to Closing | | | | | $ 1,781,837.13 |
| | | | | | |
| **VENTURE INVESTMENTS** | | | | | |
| EIG Investors Corp. (formerly Bizland) | | Common | 10,956 | 1.62 | $ 17,772.53 |
| Masergy Communications, Inc. | | Common | 8,873 | 5.05 | 44,808.65 |
| New Vine Logistics, Inc. | | Common | 1,444,847 | 0.03 | 43,345.41 |
| Wayport, Inc. | | Series D Preferred | 11,407 | 7.50 | 85,552.50 |
| SUBTOTAL - VENTURE INVESTMENTS | | | | | 191,479.09 |
| | | | | | |
| **WARRANTS** | | | | | |
| aTtela, Inc. - Expire 2/1/08 | | Series A Preferred | Unable to confirm | | |
| Corechange Inc. - Expire 3/1/08 | | Series C Preferred | Unable to confirm | | |
| Elf Technologies (now known as Serengeti) - Two warrants expiring 4/10/05 or 07, and 6/20/08 | | Series B Preferred/ Next Round | Unable to confirm | | |

EXHIBIT A
SAND HILL CAPITAL HOLDINGS INC.
LIST OF ASSETS

| Description | Account Number | Type of Shares | # of Shares | Market Price Per Share | Value |
|---|---|---|---|---|---|
| Jamcracker warrants - Expire 11/30/10 | | Common | 27 | 0.050 | |
| Vcampus - Expire 4/23/09 | | Common | Unable to confirm | | |
| SUBTOTAL - WARRANTS | | | | | 0.00 |
| TOTAL | | | | | $ 1,973,316.22 |

YJV 05/19/2008

**Exhibit B**
**Cash Distributions**

EXHIBIT B
SAND HILL CAPITAL HOLDINGS, INC.
Cash Distribution Calculations

| | Sand Hill Capital Holdings, Inc. | William J. Del Biaggio III | Thomvest Holdings LLC | Thomvest Seed Capital Inc. |
|---|---|---|---|---|
| **CASH:** | | | | |
| First Bank Commercial Checking Account #9418902461 | $ 1,781,681.98 | | | |
| First Bank - General Account #9418902348 | 155.15 | | | |
| Total Cash Prior to Closing | $ 1,781,837.13 | | | |
| **DISTRIBUTION OF CASH:** | | | | |
| Final payment to Robert Johnson for his services | (5,000.00) | | | |
| Final payment to Jaime Felix for his services | (3,000.00) | | | |
| Final payment to Jackie Singh for her services | (1,000.00) | | | |
| Subtotal | 1,772,837.13 | | | |
| Repay loan owed to Thomvest Seed Capital Inc. re: Pinnacle/Nonstop transactions | (251,001.50) | | | $ 251,001.50 |
| Repay Inter-Company Note for SHCH expenses paid by Thomvest Holdings LLC | (667,959.26) | | $ 667,959.26 | |
| Repay Payable for SHCH expenses paid by William J. Del Biaggio III (Note 1) | (58,495.05) | $ 58,495.05 | | |
| Deduct 75% of $11,405.43 Jamba Juice check from William J. Del Biaggio III's share and credit to THLLC, as this was erroneously deposited by one of his Sand Hill entities. | | (8,554.07) | 8,554.07 | |
| Subtotal | 795,381.32 | 49,940.98 | 676,513.33 | 251,001.50 |
| Payout of remaining cash at SHCH sale closing: | | | | |
| 75% to Thomvest Holdings LLC | (596,535.99) | | 596,535.99 | |
| 25% to William J. Del Biaggio III for partial Repayment of SHCH Expenses paid by WJDB | (198,845.33) | 198,845.33 | | |
| Total at SHCH sale closing | $ - | $ 248,786.31 | $ 1,273,049.32 | $ 251,001.50 |

| | | |
|---|---|---|
| Debt Repayment to Thomvest Holdings LLC re: $10mm Promissory Note | | |
| Value of stock and warrants at closing per Exhibit A | 191,479.09 | |
| Value of remaining cash in SHCH at closing due to Thomvest Holdings LLC | 596,535.99 | |
| Total debt repaid | $ 788,015.08 | |

Note 1: Total expenses paid by Boots Del Biaggio per R.Johnson summary dated 02-16-04    $ 309,496.55
Less: Pinnacle investment personally guaranteed by William J. Del Biaggio III    (251,001.50)
Payable due to William J. Del Biaggio III    $ 58,495.05

YJV 05/18/2005